**STATE of Minnesota, Appellant,**

v.

**Patrick J. DELANEY, Respondent.**

**No. C1–86–2059.**

Court of Appeals of Minnesota.

June 2, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Patrick W. Ledray, Prosecutor, City of St. Louis Park, Kenneth N. Potts, Asst. Prosecutor, Minneapolis, for appellant.

Thomas M. Kelly, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and LESLIE and STONE,* JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

The State of Minnesota appeals from a pretrial order dismissing charges of driving after revocation and driving without license plates against respondent Patrick J. Delaney. The trial court dismissed the charges, finding the investigatory stop of Delaney unconstitutional. Delaney filed a notice of review, seeking review of the trial court's determination that he was not entitled to dismissal of a charge of giving false information to a peace officer. We reverse the trial court's dismissal of the charges against Delaney.

## FACTS

On May 13, 1986 at about 11:45 a.m. a St. Louis Park police officer was patrolling and observed respondent Patrick J. Delaney stopped at an intersection in an automobile. The vehicle was a 1984 model Buick with no license plates. Instead, a 21 day temporary permit, issued pursuant to Minn.Stat. § 168.092 subd. 1 (1984), was displayed in the rear window. The officer could not read the expiration date on the permit, but did observe the permit was faded.

Because he suspected the faded permit had expired, the officer stopped Delaney's vehicle. The temporary permit had indeed expired and had been altered to change the expiration date. Upon inquiry Delaney gave the officer false identification. The officer noticed the description on the identification did not match Delaney's features. Delaney then admitted his true identity.

Delaney's driving privileges had been revoked in March 1985 for his second DWI offense. Consequently, the officer charged Delaney with driving after revocation in violation of Minn.Stat. § 171.24 (1984), driving without license plates in violation of Minn.Stat. 169.79 (1984), and giving false information to a peace officer in violation of Minn.Stat. § 171.22(5) (1984).

Delaney argued at a Rasmussen hearing that the investigatory stop of his vehicle was unconstitutional. The police officer testified that the only thing that raised suspicions in his mind was the temporary permit which appeared faded in color. He stated that in his experience a faded temporary permit often meant the permit had expired.

The trial court agreed with Delaney that the stop was unconstitutional because the officer "did not have sufficient specific, articulable facts to believe [Delaney] was engaged in criminal activity." The court dismissed the charges for driving after rev-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ocation and driving without license plates, but refused to dismiss the false information charge. It reasoned that evidence of a crime committed in response to an illegal stop need not be suppressed.

The State appeals the dismissal of charges, claiming the officer had a reasonable suspicion that Delaney was driving an unlicensed motor vehicle. Delaney filed a notice of review claiming the third charge should also be dismissed. He claims his actions amounted to passive refusal to consent to an illegal stop and all evidence should therefore be suppressed.

## ISSUE

Did the trial court err in finding the stop of respondent's vehicle unconstitutional?

## ANALYSIS

The trial court relied in part on a Texas decision which held that a stop is invalid if the observed facts are consistent with innocent activity. *See Schwartz v. State*, 635 S.W.2d 545 (Tex.Crim.App.1982). The trial court reasoned that Delaney's license, being "only slightly faded, * * * was as consistent with innocent activity as with criminal activity."

The Texas approach has been rejected in Minnesota. *See State v. Combs*, 398 N.W.2d 563, 565–66 (Minn.1987). The *Combs* court quoted from the Supreme Court case of *Illinois v. Gates*, 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983), which stated that "innocent behavior frequently will provide the basis for a showing of probable cause". Here, the trial court erred by relying on the "innocent activity" rationale of *Schwartz*. However, the trial court also reasoned that the police did not have a sufficient objective basis to believe Delaney was engaged in criminal activity. Delaney claims this alone is a valid basis for holding the stop illegal.

An investigatory stop is valid if the police who make the stop have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Delaney argues the determination that his temporary permit was "faded" is too subjective and dependent upon the individual officer's interpretation to be consistent with the objective criterion necessary for a valid stop.

█ While objective observations may provide a sufficient basis for an investigatory stop, *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 733, n. 1 (Minn. 1985), the determinative issue is whether an officer's " 'belief' (or 'suspicion' or 'assumption') that the violation occurred was reasonably inferable from what he did see." *Id.* at 733. In the present case, the observation justifying the stop is that the police officer noticed a faded temporary license. While Delaney argues that objective observations are required, he does not contend the license was valid or even that it was not faded. The officer testified that the license was faded and the trial court did find the license was "slightly faded."

Additionally, the officer knew from experience that a faded license usually meant the license was expired. A police officer makes his assessment on the basis of all circumstances. *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The officer then "draws inferences and makes deductions— inferences and deductions that might well elude an untrained person." *Id.* The process deals with probabilities, not hard certainties. *Id.* Thus the officer in this case reasonably drew from the observed facts the inference that the license had expired.

In *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976) the only fact justifying the stop was that a police officer had observed that license plates on an automobile had been wired on with baling wire instead of being bolted on. *Id.* at 207, 241 N.W.2d at 477. This single observation led to an inference of criminal activity and the stop was upheld as valid. The supreme court relied on language from a New York decision to support its holding:

It should be emphasized that the factual basis required to support a stop for a 'routine traffic check' is minimal. An

actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'

*Id.* at 206, 241 N.W.2d at 477 (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)). The *Barber* court found the quoted language to be dispositive of the issue and held that "the action of the police officer in stopping defendant's vehicle * * * was proper and not based on mere whim, caprice, or idle curiosity." *Barber*, 308 Minn. at 207, 241 N.W.2d at 477.

 Applying this standard, we are unable to say the stop was invalid. The officer had experience in this area and had found on prior occasions that a temporary license which had faded in color usually meant the license had expired. The officer, with the suspicion in his mind that the license was expired, was not acting on mere whim, caprice or idle curiosity. On the contrary, the officer reasonably suspected the license had expired. Under these standards the stop was clearly valid.

Delaney claims that because the stop was found to be invalid he is entitled to have the false information charge dismissed. Because we hold the stop was valid, we need not address this issue, as all charges must now be tried.

### DECISION

We reverse the decision of the trial court and uphold the investigatory stop as valid. The officer's actions were not the product of mere whim, caprice, or idle curiosity.

Reversed.